IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY IHLENFELDT,<br><br>Plaintiff,<br><br>vs.<br><br>OCWEN LOAN SERVICING, LLC<br>and OCWEN FINANCIAL<br>CORPORATION,<br><br>Defendants. | No. C15-2060<br><br>ORDER GRANTING MOTION TO<br>STRIKE JURY DEMAND |

This matter comes before the Court on the Motion to Strike Plaintiff's Jury Demand (docket number 9) filed by Defendants Ocwen Loan Servicing, LLC and Ocwen Financial Corporation (collectively "Ocwen") on October 7, 2015; the Resistance (docket number 12) filed by Plaintiff Kimberly Ihlenfeldt on October 26; and the Reply (docket number 13) filed by Ocwen on October 30. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## I. PROCEDURAL HISTORY

On June 17, 2015, Ihlenfeldt filed a petition at law and jury demand in the Iowa District Court for Black Hawk County. Ihlenfeldt claims that in terminating her employment, Ocwen violated the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). The action was removed to this Court on July 22. Ocwen filed an answer on July 28, denying the material allegations and asserting certain affirmative defenses.

On October 7, 2015, Ocwen filed the instant motion to strike Ihlenfeldt's jury demand. Ocwen argues that Ihlenfeldt waived her right to a jury by signing a "Pre-Dispute Agreement" prior to beginning her employment. Ihlenfeldt argues that the

agreement is not enforceable because (1) it was not signed by a representative of Ocwen, and (2) Ihlenfeldt did not sign it knowingly and voluntarily.

On October 21, 2015, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. In reliance on the deadlines established in the Scheduling Order, Chief Judge Linda R. Reade scheduled a jury trial on October 17, 2016.

## II. RELEVANT FACTS

On September 13, 2013, Edward G. Moran, Vice-President of Human Resources for Ocwen, sent a letter to Ihlenfeldt "confirm[ing] our preliminary offer of employment to you as a Loan Counselor." The letter referred to two documents requiring Ihlenfeldt's signature.

> We have also enclosed a Pre-Dispute Agreement and an Employee Intellectual Property Agreement for your execution. Please complete and bring your signed paper work to Human Resources on your first day.

Letter from Edward G. Moran to Kimberly S. Ihlenfeldt, dated September 13, 2013 at 2 (docket number 9-2 at 6). Ihlenfeldt began her employment as a loan counselor at Ocwen on September 30, 2013. According to an affidavit of Leslie Schaver, Senior Manager of Human Resources at Ocwen, Ihlenfeldt returned the signed Pre-Dispute Agreement on the same day.

In her affidavit, Ihlenfeldt acknowledges that she began working at Ocwen on September 30, 2013. She also admits that the Pre-Dispute Agreement contains her signature. According to Ihlenfeldt, however, she does not remember receiving any document regarding a waiver of her right to a jury trial and has no recollection of signing the Pre-Dispute Agreement. However, Ihlenfeldt remembers "having to sign a number of documents as part of initiation for working at Ocwen." Ihlenfeldt denies that any personnel at Ocwen ever discussed the Agreement with her, and she was never informed that she could discuss any of the documents with an attorney prior to signing.

2

Furthermore, she was not told by Ocwen employees that "I had the ability to negotiate with Ocwen regarding any of the terms of my employment."[1]

The one-page Pre-Dispute Agreement states, in its entirety, as follows:

> As a condition of my employment with Ocwen Financial Corporation, or its subsidiaries and affiliates, located in the continental United States (hereinafter "Ocwen"), I agree to waive my right to a jury trial with respect to any claims, controversies or disputes which arise out of or relate to my employment with Ocwen or separation therefrom. Ocwen agrees to waive any right which it may have to receive a trial by jury in any action or proceeding related to my employment.
>
> Both Ocwen and I agree that all disputes relating to my employment with Ocwen or separation there from shall be decided by the Federal or state court which has jurisdiction in the geographic area where I am employed by Ocwen. This shall also apply as to where an appeal may be taken.
>
> I understand that I am waiving my right to a jury trial voluntarily and knowingly, and free from duress or coercion. 1 acknowledge that I have had adequate opportunity to review this document and to consult with an attorney or other person(s) of my choosing, before signing this document.

*See* docket number 9-4 at 2. Plaintiff signed the Agreement and it is dated 9-30-13. There appears to be a signature line for Ocwen, but it is not signed by any Ocwen representative.

### III. DISCUSSION

The Seventh Amendment guarantees the right to a jury trial in a civil proceeding. *Northern Pipeline Constr. Co. v. Marathon Pipe Line*, 458 U.S. 50 (1982). *See also* FEDERAL RULE OF CIVIL PROCEDURE 38(a). In her brief, however, Ihlenfeldt concedes that "the Seventh Amendment right to a trial by jury in a civil lawsuit may be waived by

---

[1] Affidavit of Kimberly Ihlenfeldt at 2, ¶ 9 (docket number 12-2 at 2).

contract." *Cooperative Finance Ass'n, Inc. v. Garst*, 871 F. Supp. 1168, 1171 (N.D. Iowa 1995) ("Contractual waivers of the right to a jury trial are neither illegal nor contrary to public policy."). On the other hand, Ocwen concedes that "for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" *Brookhart v. Janis*, 384 U.S. 1, 4 (1966). That is, "[f]or a waiver to be effective, the party waiving the right must do so 'voluntarily' and 'knowingly' based on the facts of the case." *Garst*, 871 F. Supp. at 1171.

Here, it is undisputed that Ihlenfeldt signed an agreement "[a]s a condition of [her] employment," agreeing to "waive my right to a jury trial with respect to any claims, controversies or disputes which arise out of or relate to my employment with Ocwen or separation therefrom." Nonetheless, Ihlenfeldt argues the Agreement is unenforceable because it was not signed by Ocwen, and because Ihlenfeldt did not sign it knowingly and voluntarily.

### A. Does an Enforceable Agreement Require Ocwen's Signature?

Ihlenfeldt first argues that the Pre-Dispute Agreement is unenforceable because it does not bear Ocwen's signature. "For a contract to be valid, the parties must express mutual assent to the terms of the contract." *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010) (quoting *Schaer v. Webster County*, 644 N.W.2d 327, 338 (Iowa 2002)). The Pre-Dispute Agreement, signed by Ihlenfeldt, is enforceable and binding on the parties if there was mutual assent. "Mutual assent is present when it is clear from the objective evidence that there has been a meeting of the minds." *Id.* Ihlenfeldt argues that Ocwen has not shown that it assented to the Pre-Dispute Agreement.

As Ihlenfeldt concedes, however, mutual assent does not necessarily require the signature of both parties. *US Bank Nat. Ass'n v. Taylor*, 2012 WL 2367751 (N.D. Iowa) at *2 ("While mutual assent is required for a contract to be valid, signatures are not essential to the validity of a contract if mutual assent is otherwise shown."); *Subcliff v.*

4

*Brandt Engineered Products, LTD*, 459 F. Supp. 2d 843, 852 (S.D. Iowa 2006) ("Signed signatures of both parties are not essential for establishment of a binding contract if manifestation of mutual expressions of consent is otherwise shown"); *Phone Connection*, 494 N.W.2d at 448 ("The parties to an unsigned agreement are obligated to abide by the agreement, when the acceptance appears from the acts of the parties."). *But see Baier v. Darden Restaurants*, 420 S.W.3d 733 (Mo. App. 2014).

Here, a representative of Ocwen sent Ihlenfeldt a letter on September 13, 2013, confirming Ocwen's preliminary offer of employment. According to the letter, the offer was contingent upon a formal investigation of Ihlenfeldt's background and successful completion of a drug screening. Enclosed with the letter was the Pre-Dispute Agreement.[2]

The Pre-Dispute Agreement states that "[a]s a condition of my employment," Ihlenfeldt agrees to waive her right to a jury trial. The Agreement further provides that "Ocwen agrees to waive any right which it may have to receive a trial by jury." By sending the Agreement to Ihlenfeldt, making its acceptance a condition of employment, and then employing Ihlenfeldt after she signed it, I believe the objective evidence establishes Ocwen assented to the terms of the Agreement.[3] Accordingly, I conclude the failure of an Ocwen representative to sign the document is not fatal to its enforcement.

---

[2] The Court rejects the inference in Ihlenfeldt's affidavit that she did not receive the Pre-Dispute Agreement with the letter. According to her affidavit, Ihlenfeldt does not "remember" receiving the document and does not remember signing it, although she admits that it "contains my signature." If Ihlenfeldt received the letter and the referenced documents were not attached, then it seems likely she would have contacted Ocwen.

[3] In a New York case involving an arbitration agreement, the Court noted that "there is no requirement that such a writing must be signed by a party against whom arbitration is sought. Presumably, it is even clearer that it is unnecessary that it be signed by the party seeking enforcement." *Rudolph & Beer, L.L.P., v. Roberts*, 260 A.D.2d 274, 275 (N.Y. App. 1999).

## B. Did Ihlenfeldt Execute the Agreement Knowingly and Voluntarily?

Next, Ihlenfeldt argues that she did not sign the Pre-Dispute Agreement knowingly and voluntarily. Ihlenfeldt has "no recollection" of signing the Agreement, but is confident the document was not discussed with her prior to signing. Ocwen concedes the waiver must be knowing and voluntary to be effective, but argues that Ihlenfeldt's "self-serving" position is "untenable."

The Pre-Dispute Agreement was attached to a letter which Ihlenfeldt received approximately two weeks prior to beginning her employment. The letter referred to the Pre-Dispute Agreement (and another document) and instructed Ihlenfeldt to "complete and bring your signed paper work to Human Resources on your first day." The Agreement is dated and was apparently signed by Ihlenfeldt on September 30, 2013, her first day of employment. According to its terms, the Pre-Dispute Agreement was signed "voluntarily and knowingly, and free from duress or coercion." By signing the Agreement, Ihlenfeldt also acknowledged that "I have had adequate opportunity to review this document and to consult with an attorney or other person(s) of my choosing, before signing this document."

In *Morris v. McFarland Clinic P.C.*, 2004 WL 306110 (S.D. Iowa), Chief Magistrate Judge Walters identified the factors courts have considered in determining a contractual jury waiver issue:

> whether the waiver is in a standardized form or newly drafted contract; whether attention is drawn to the provision by its placement or configuration in the contract; whether the contract was tendered on a take-it-or-leave-it basis or was negotiated; the length of the agreement; whether the parties were represented by counsel and the sophistication of the parties; whether the resisting party had an opportunity to review the agreement and in fact reviewed it; and whether there was manifest inequality between the parties in bargaining power.

*Morris*, 2004 WL 306110 at *2.

I will address each factor in order. Here, it would appear the Pre-Dispute Agreement is a "standardized form." According to the affidavit of Judd Esch, Senior Manager of Corporate Recruiting for Ocwen, it is Ocwen's "regular practice" to include the pre-dispute agreement with the offer letter sent to the new employee. That is, the Pre-Dispute Agreement was not "newly drafted" specifically for Ihlenfeldt. This factor weighs against a finding the waiver was knowing and voluntary.

The second factor to be considered is whether attention is drawn to the jury waiver by "its placement or configuration in the contract." Stated otherwise, is the jury waiver "in fine print or in large bold print, [or] set off in a paragraph of its own." *Garst*, 871 F. Supp. at 1172. Here, the jury waiver was not buried in fine print in a lengthy document, or merely set off in its own paragraph, but instead was a stand-alone document. The one-page Agreement extends only six sentences. The first sentence of the Agreement states in plain English that the signator "agree[s] to waive my right to a jury trial with respect to any claims, controversies or disputes which arise out of or relate to my employment with Ocwen or separation therefrom." The fifth sentence of the Agreement also makes it clear that the signator is "waiving my right to a jury trial." This factor weighs strongly in favor of a finding the waiver was knowing and voluntary.

The third factor identified in *Morris* is whether the agreement was "take-it-or-leave-it" or was negotiated. The first clause of the first sentence of the Pre-Dispute Agreement states the employee is waiving her right to a jury trial "[a]s a condition of my employment." While Ihlenfeldt never asked to negotiate that condition of her employment, Ocwen provides the agreement to all new employees, and the language employed in the Agreement suggests that it is non-negotiable. *But see Morris*, 2004 WL 306110 at *2 ("The fact the parties did not engage in negotiations concerning the jury waiver provision is not evidence that the term was "non-negotiable."). This suggests the waiver was not voluntary.

7

Next, the Court may consider the "length of the agreement." As previously noted, the Pre-Dispute Agreement is one page, three paragraphs, and six sentences. The only subjects of the Pre-Dispute Agreement were a waiver of a jury trial by the employee and Ocwen, and the venue of any litigation. By any measure, the Agreement cannot be considered a lengthy document. This suggests the waiver was "knowing."

The Court must also consider whether the parties were represented by counsel and the "sophistication" of the parties. The Pre-Dispute Agreement was sent to Ihlenfeldt approximately two weeks before she began her employment. By the terms of the Agreement, Ihlenfeldt "acknowledge[d] that I've had the opportunity to review this document and to consult with an attorney or other person(s) of my choosing, before signing this document." While Ihlenfeldt apparently did not discuss the Pre-Dispute Agreement with an attorney, or anyone else, I believe she had an adequate opportunity to do so. This factor weighs strongly in favor of a finding the waiver was both knowing and voluntary.

In arguing that her waiver was not knowing, Ihlenfeldt points to her comparative lack of sophistication. According to her resume, however, Ihlenfeldt is a college graduate, and she was hired by Ocwen as a Loan Counselor. The jury waiver in this case was not lengthy, nor is it complicated. Rather, the Pre-Dispute Agreement states plainly that the parties are waiving their right to a jury trial regarding any dispute relating to Ihlenfeldt's employment. A person of ordinary intelligence — particularly one who graduated from college — would understand its meaning.

Next, the Court must consider whether Ihlenfeldt had an opportunity to review the Agreement and, in fact, reviewed it. As previously noted, Ihlenfeldt had approximately two weeks to review the Pre-Dispute Agreement before reporting on her first day of work. Ihlenfeldt concedes that the Agreement bears her signature, but avers that she has no

recollection of signing it. If Ihlenfeldt failed to review the document before signing it, she did so at her peril. Again, this factor supports the enforceability of the waiver.

Finally, the Court is required to consider whether there was "manifest inequality" between the parties' bargaining power. It is difficult for the Court to make an assessment in this regard without additional information. For example, how eager was Ocwen to hire Ihlenfeldt? Did Ocwen have a substantial shortage of loan counselors? Were there other qualified applicants for the position? On the other hand, how eager was Ihlenfeldt to accept the employment? How robust was the job market for applicants at that time? Did Ihlenfeldt have other opportunities available to her? I am unable to tell on this record whether there was "manifest inequality" between the bargaining power of the parties. (The Court notes parenthetically that "[i]n this regard the standard is not inequality, but inequality that is manifestly or grossly in favor of the proponent of the waiver." *Morris*, 2004 WL 306110 at \*3.) I believe this factor does not favor either party.

Although a split currently exists between the circuits regarding the burden of proof, courts in the Eighth Circuit have generally held that a party attempting to enforce a jury waiver has the burden of proving the waiver is "knowing" and "voluntary." *Thomas v. Vista A & S 2006-1, LLC*, 2010 WL 3119802 (D. Neb.) at \*1; *Morris*, 2004 WL 306110 at \*1; *Garst*, 871 F. Supp. at 1172, n.2. The Court concludes that Ocwen has met its burden of proving that Ihlenfeldt's waiver of her right to a jury trial was knowing and voluntary. The jury waiver — which is contained in a separate one-page document and written in plain English — was provided to Ihlenfeldt prior to her acceptance of employment with Ocwen. Ihlenfeldt had an adequate opportunity to read the document and consult with others, if she chose to do so. Ihlenfeldt is a college graduate and the meaning of the Agreement should have been clear to her. While execution of the document may have been a non-negotiable "condition of employment," we don't know for sure because Ihlenfeldt never asked. After considering all of the facts and circumstances, I conclude

the jury waiver was knowing and voluntary and, therefore, Ihlenfeldt is not entitled to a jury trial in this case.

## IV. ORDER

IT IS THEREFORE ORDERED that the Motion to Strike Plaintiff's Jury Demand (docket number 9) is **GRANTED**. All of the pretrial deadlines established in this case remain in full force and effect. However, the trial scheduled on October 17, 2016 will be a non-jury trial before Chief Judge Linda R. Reade, and *not* a jury trial as previously scheduled.

DATED this 4th day of November, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA